**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**CROMWELL ARCHITECTS
ENGINEERS, INC.**                                                                                         **PLAINTIFF**

**v.**                           **Case No. 4:21-cv-00829-KGB**

**UNITED STATES OF AMERICA**                                                                 **DEFENDANT**

### ORDER

Before the Court is defendant United States of America's ("government") motion to dismiss (Dkt. No. 12). Plaintiff Cromwell Architects Engineers, Inc. ("Cromwell") filed a response opposing the motion to dismiss, and the government filed a reply (Dkt. Nos. 14; 15). For the following reasons, the Court denies the government's motion to dismiss (Dkt. No. 12).

**I.     Factual Background**

Unless otherwise noted, the Court draws the following facts from Cromwell's complaint (Dkt. No. 1). *Farm Credit Servs. of Am., FLCA v. Haun*, 734 F.3d 800, 803–04 (8th Cir. 2013) (explaining that in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party).

Cromwell is a full service architectural and engineering firm with its principal place of business in Little Rock, Arkansas (*Id.*, ¶¶ 1, 52). Cromwell "performs sophisticated research and development activities for complex government facilities" (*Id.*, ¶ 26). This work includes creating project designs for "buildings and their component systems for schools, hospitals, military installations, and government buildings" (*Id.*, ¶ 52). Specifically, Cromwell "creates architectural

and engineering designs for building envelopes, plumbing systems, mechanical systems, and electrical systems" (*Id.*).

Cromwell brings this action under 26 U.S.C. §§ 41 and 179D to recover $640,727.00 and $768,082.00 in federal income taxes paid during the tax years ending on December 31, 2009, and December 31, 2011 (*Id.*, ¶ 5).[1]  Under 26 U.S.C. § 41 ("§ 41") a taxpayer can claim a tax deduction for qualified research expenses ("QRE") that exceed the amount they spent during an earlier comparison period.  Under 26 U.S.C. § 179D ("§ 179D"), a taxpayer can deduct the cost of an energy efficient commercial building property "placed in service during the taxable year."

### A. Research And Development Tax Credits Under § 41

Under 26 U.S.C. § 41, taxpayers can claim a tax credit for QREs that exceed the amount they spent during an earlier comparison period.  This credit is equal to 20 percent of the difference between a taxpayer's QREs from the year in which the credit is claimed and the "base amount" – the QREs from the comparison period.  26 U.S.C. § 41(a).  QREs include wages paid to employees who perform or supervise qualified research.  *Id.* § 41(b).  Qualified research includes research and development in the experimental or laboratory sense, research that is undertaken to discover information that is technological in nature and that is intended to be used in the development of a new or improved business component of the taxpayer, and activities that constitute elements of a process of experimentation for a specified purpose.  *Id.* § 41(d); 26 CFR § 1.174-2(a)(1).

### B. Energy Efficient Commercial Buildings Deduction Under § 179D

Under 26 U.S.C. § 179D, a taxpayer can deduct the cost of an energy efficient commercial building property "placed in service during the taxable year."  The term "energy efficient

---

[1] The Court notes that Cromwell also seeks a review of its § 179D deductions in the tax-year ending on December 31, 2011 (Dkt. No. 1, ¶ 58).

commercial building property" means property that, among other requirements, is installed as part of: (1) the interior lighting system, (2) the HVAC system, or (3) the building envelope, and is certified as installed as part of a plan to reduce the total annual energy and power costs with respect to the interior lighting systems, heating, cooling, ventilation, and hot water systems of the building by 50 percent or more as compared to a reference building that meets the minimum requirements of Reference Standard 90.1.[2]  26 U.S.C. § 179D(c) *et seq.*

If a property cannot meet the 50-percent threshold, the owner may deduct the cost of energy-efficient property installed as part of one of the three systems mentioned above if the system has reduced the total energy cost of the building by a certain percentage. 26 U.S.C. § 179D(d)(1)(A); IRS Notice 2006-52 §§ 2.03(a). Government entities, which do not benefit from tax deductions, are allowed to allocate the § 179D deduction "to the person primarily responsible for designing the property in lieu of the owner of such property." 26 U.S.C. § 179D(d)(4). That person must then meet the statutory and regulatory requirements that would apply to the owner of the property. *Id.* (explaining that "[s]uch person shall be treated as the taxpayer for purposes of this section.").

## II.     Legal Standard

A Federal Rule of Civil Procedure 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

---

[2] "The term 'Reference Standard 90.1' means, with respect to any property, the most recent Standard 90.1 published by the American Society of Heating, Refrigerating, and Air Conditioning Engineers and the Illuminating Engineering Society of North America which has been affirmed by the Secretary, after consultation with the Secretary of Energy, for purposes of this section not later than the date that is [two] years before the date that construction of such property begins." 26 U.S.C. § 179D(c)(2).

3

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 773 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated differently, the allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

  A court considering a motion to dismiss must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in favor of the non-moving party, here, Cromwell. *See Farm Credit*, 734 F.3d at 804; *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005); *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001). However, a court need not credit conclusory allegations or "naked assertion[s] devoid of further factual enhancement." *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Finally, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider documents or exhibits attached to a complaint, as well as matters of public and administrative record referenced in the complaint. *See Owen v. Gen. Motors Corp.*, 533 F.3d 913, 918 (8th Cir. 2008); *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006). "[D]ocuments necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citing *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir.2004)). "Documents necessarily embraced by the

4

pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti*, 666 F.3d at 1151.

### III.     Analysis

Cromwell seeks a $1.4 million tax refund for research and development activities and energy efficient commercial building activities under 26 U.S.C. §§ 41 and 179D (Dkt. No. 13 at 1).

Cromwell claims that the Internal Revenue Service ("IRS") erred in denying its § 41 tax credits ("R&D Credits") for four reasons:  (1) the IRS did not recognize that Cromwell incurred substantial QREs for the tax years ending on December 31, 2009, and December 31, 2010, for which the law provided a tax credit; (2) the IRS incorrectly interpreted and misapplied the Internal Revenue Code requirements for a taxpayer to claim properly the § 41 research and development tax credit; (3) the IRS disallowed Cromwell's research and development tax credit for years ending on December 31, 2009, and December 31, 2010; and (4) the IRS miscalculated the research and development tax credit for tax years ending on December 31, 2009, and December 31, 2010 (Dkt. No. 1, ¶ 41).

Similarly, Cromwell claims that the IRS erred in disallowing its § 179D tax deduction for four reasons:  (1) the IRS did not recognize that Cromwell created technical solutions for the installation of energy-efficient commercial building property that provided substantial reductions in total annual energy and power costs of buildings owned by the federal and state governments for the tax years ending on December 31, 2009, December 31, 2010, and December 31, 2011, for which the law provided a tax credit; (2) the IRS incorrectly interpreted and misapplied the Internal Revenue Code requirements for a taxpayer to claim properly the § 179D tax deduction; (3) the IRS

disallowed Cromwell's § 179D tax deduction for the tax years ending on December 31, 2009, December 31, 2010, and December 31, 2011; and (4) the IRS improperly calculated the § 179D tax deduction for tax years ending on December 31, 2009, December 31, 2010, and December 31, 2011 (Dkt. No. 1, ¶ 58).

The government argues that Cromwell's complaint must be dismissed because it "conspicuously" leaves out any factual allegations and makes "threadbare recitals of Section 41 R&D Credit's elements and conclusory statements that Cromwell satisfies them" (Dkt. No. 13, at 7). Moreover, the government maintains that Cromwell "does not identify any QREs, allege how its supposed QREs satisfy . . . Section 41's four-part test, or explain how it calculated the $1.4 million of Section 41 R&D Credits at issue" (*Id.*, at 8). Equally absent, according to the government, are any factual allegations supporting Cromwell's claim for § 179D deductions, such as the property on which Cromwell worked, when Cromwell worked on the property, or for which government agency Cromwell performed work (*Id.*, at 8–9). Like Cromwell's § 41 claim, the government contends that Cromwell's complaint only includes "threadbare recitals of Section 179D's elements and conclusory statements . . . ." (*Id.*, at 9). Therefore, according to the government, the Court should dismiss Cromwell's complaint under Rule 12(b)(6) for failing to state a claim upon which relief can be granted (*Id.*).

Cromwell disagrees with the government's characterization of its complaint. Cromwell has alleged that it committed work entitling it to both § 41 R&D credits and § 179D tax deductions (Dkt. No. 1, ¶ 59). Cromwell has also stated the years it claimed these tax benefits and their combined dollar amounts (*Id.*, ¶ 60). Most importantly, Cromwell maintains that the IRS's administrative determination regarding the tax benefits was in error, even though the company provided sufficient information to support its assessments. As Cromwell's response brief points

out, the IRS "conducted a more than five-year examination of Cromwell's amended returns . . . which included at least nine . . . Information Document Requests ('IDRs'), a site visit and interviews with Cromwell employees, production of more than 30,000 pages of documents (requested in the 9 IDR's), and a Protest to the IRS' Notice of Proposed Adjustments ('NOPA')" (Dkt. No. 14, at 6).

The government's central argument in response to this contention is that the instant case proceeds *de novo* without regard to the administrative proceedings below, barring Cromwell from simply alleging that the IRS erred in disallowing the disputed tax benefits (Dkt. No. 15, at 4).

Under the controlling standard, Cromwell survives the instant motion if it pleads facts sufficient to "provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Adams v. Am. Fam. Mut. Ins. Co.*, 813 F.3d 1151, 1154 (8th Cir. 2016). "[A] tax refund suit is a *de novo* proceeding in which the taxpayer bears the burden of proving his or her case by a preponderance of the evidence." *Lua v. United States*, 123 Fed. Cl. 269, 273 (2015); *see also R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991).

Here, Cromwell lays out the years for which Cromwell claimed the tax credit; specifies the years for which the government denied it the allegedly owed tax credits; provides the amount of tax refund it believes it is owed; cites applicable Treasury Regulations; provides plausible reasons for why Cromwell claims the credits, despite what Cromwell characterizes as the government's purported errors in denying the above-mentioned tax credits; and in so doing states "a claim to relief that is plausible on its face." *Iqbal* 556 U.S. at 663 (quoting *Twombly* 550 U.S. at 570). The government has fair notice of Cromwell's claims and the basis upon which Cromwell seeks relief.

The government cites *Williams v. United States*, 112 Fed. Cl. 67, 78 (2013), and *Washington Mutual, Inc. v. United States*, 856 F.3d 711, 721 (9th Cir. 2017), for the proposition

7

that Cromwell fails to state a claim. The Court, after reviewing these cases, finds them inapt to the instant case.

In *Williams*, a *pro se* plaintiff sued the United States to collect a $11,074.87 tax refund allegedly owed to her. 12 Fed. Cl. at 70. In support of the claimed refund, she attached several forms to an amended return including "four bills from creditors . . . on which Plaintiff had handwritten the words 'Money Order' made payable to the 'Department of Treasury, Timothy F. Geithner, Chief Financial Officer of the IMF.'" *Id.* at 70–71. The IRS denied the request and assessed plaintiff a $5,000.00 frivolous return penalty. *Id.* at 71. In response, plaintiff sued the IRS. *Id.* The government moved for dismissal, arguing that the *Williams* plaintiff indicated she made no money on her amended return for the year in question but simultaneously claimed she made payments to the chief financial officer of the International Monetary Fund. *Id.* at 77. Specifically, the government pointed the *Williams* court to Tax Forms 1040NR and 4330 which showed the plaintiff had not paid taxes in the year in question. *Id.* at 77–78. The Court concluded that Forms 1040NR and 4330 created a presumption that the *Williams* plaintiff had not paid in excess of her tax liability or even paid at all, making her ineligible to claim a tax refund. *Id.* at 78. The *Williams* court determined that plaintiff's complaint had not overcome that presumption. In the case before this Court, the government points the Court to no such presumption and nothing in the pleadings indicates that Cromwell, if its allegations are true, would be unable to claim the refunds for the tax years in question.

*Washington Mutual*, the second case cited by the government, does little to change the Court's approach to the instant motion. 856 F.3d at 711. *Washington Mutual* involved an appeal from a bench trial where the trial court determined that the appellant "failed to meet its burden to establish the value for the intangible assets . . . ." at issue. *Id.* at 714. Cromwell's burden here is

not that of a litigant at the conclusion of a bench trial, like the plaintiff in *Washington Mutual*; the Court applies here the motion to dismiss standard, not standards that control an appeal from a bench trial or a decision on summary judgment.

Cromwell, at this stage of the litigation, need only allege sufficient factual matter that, accepted as true, states "a claim to relief that is plausible on its face." *Iqbal* 556 U.S. at 663 (quoting *Twombly* 550 U.S. at 570). The authorities cited by the government do not appear to support the proposition that, in addition to alleging that the taxpayer claimed the tax benefits, the provisions pursuant to which the taxpayer did so, and that the IRS erred in disallowing disputed tax benefits, a taxpayer must provide factual details in its complaint regarding the specific activities it conducted entitling it to the tax benefits in question.

Furthermore, the Court fails to understand why concerns that the government may be unable to draft a proper responsive pleading or that Cromwell's complaint might create problems with pretrial discovery are not sufficiently addressed by the earlier IRS proceedings, which Cromwell references in its complaint through its claims that the IRS erred. Tax refund lawsuits are subject to the variance doctrine, derived from 26 U.S.C. § 7422(a), which prohibits any lawsuit "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been filed with the Secretary or his delegate according to the provisions of law in that regard . . . ." 26 U.S.C. § 7422(a); *see also IA 80 Grp., Inc. & Subsidiaries v. United States*, 347 F.3d 1067, 1074 (8th Cir. 2003) (ruling that a company adequately apprised the IRS of its claim of qualification by referencing an Internal Revenue Code provision and the entities it believed qualified it for the tax benefits). Consequently, a "ground for refund neither specifically raised by, nor included within the general language of, a timely claim for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *IA*

*80 Grp., Inc. & Subsidiaries*, 347 F.3d at 1074 (quoting *First National Bank of Fayetteville v. United States*, 727 F.2d 741, 744 (8th Cir. 1984)).

A taxpayer avoids the variance doctrine if the claim is sufficiently specific. To be sufficiently specific, the fundamental issue must be evident from the record, and the IRS must have been aware of the nature of the claim. *IA 80 Grp., Inc. & Subsidiaries*, 347 F.3d at 1074. This standard is not strict, as the purpose of the rule is to:

> (1) give adequate notice to the IRS of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination; (2) provide the IRS with an opportunity to correct any errors; and (3) limit the scope of any ensuing litigation to those issues which have been examined.

*Id.* (quoting *First National Bank of Fayetteville*, 727 F.2d at 744) (alternation in original). The government often uses the defense to prevent a taxpayer from raising an issue distinct from that listed in an administrative claim. *IA 80 Grp., Inc. & Subsidiaries*, 347 F.3d at 1074–1075. Additionally, the government may also invoke the defense to prevent a taxpayer from litigating when its administrative claim was too unclear for the IRS to ascertain the precise nature of the taxpayer's claim. *Id.*

With respect to the government's claimed insufficiency of Cromwell's factual allegations, based on this procedure, it appears to the Court that the government is on notice of the grounds on which Cromwell is claiming the tax benefits, as Cromwell was required to first present the grounds to the IRS before these Court proceedings began. Notably, the Court granted the government an earlier motion for extension of time to file an answer so that the government could obtain "sufficient information from the IRS to draft a meaningful response" (Dkt. No. 7, at 2), which information the government states it later received (Dkt. No. 10, ¶ 5). Since the current tax refund suit is limited to what Cromwell asserted before the IRS, the Court fails to understand at this stage

10

of the litigation how the government is disadvantaged in formulating a response to the complaint or in conducting adequate discovery, as the full scope of Cromwell's allegations can be ascertained by reference to the original allegations made in its complaint and the tax documents, though not attached to the complaint, which are embraced by the pleadings.

Additionally, Cromwell's response brief does not alter the sufficiency or clarity of its original factual allegations. The government alleges that administrative documents Cromwell did not include in its initial complaint and only generally refers to in its response "obfuscate" its actual allegations, violating Federal Rule of Civil Procedure 8(e)(1).[3] (Dkt. No. 15, at 5–6). However, nothing about the additional documents provided by Cromwell obfuscates its accusation that Cromwell sought tax benefits to which it claims it is entitled and that the IRS erred in disallowing the tax benefits Cromwell sought. Cromwell only appears to include these documents in its response to the government's motion to dismiss to demonstrate that the government already possesses the specific details regarding claimed QREs and energy efficiency projects, the same information the government claims is lacking from Cromwell's complaint (Dkt. No. 14, at 6–7). Indeed, Cromwell maintains that the original allegations made in its complaint are sufficient to state a claim for relief, and the Court determines that these tax documents, though not attached to the complaint, are embraced by the pleadings, with no party challenging the authenticity of these documents at this stage. *See generally Ashanti*, 666 F.3d at 1151 (explaining that "[d]ocuments necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'").

---

[3] The Court understands the government to be citing Federal Rule of Civil Procedure 8(d)(1), which states: "Each allegation must be simple, concise, and direct. No technical form is required."

11

For these reasons, the Court does not find persuasive the government's implication that Cromwell's claim is unascertainable. Cromwell's claim for relief, on the face of its complaint, at this stage in the litigation, accepting as true all well-pleaded facts in Cromwell's complaint, is ascertainable. The central issue in this case is clear on the face of Cromwell's complaint: was Cromwell entitled to the tax benefits it sought in its amended returns such that the IRS improperly denied those tax benefits?

### IV.     Conclusion

For the foregoing reasons, the Court determines that Cromwell's complaint has sufficiently stated a claim upon which relief can be granted. Given these considerations, the Court denies the government's motion to dismiss under Rule 12(b)(6) (Dkt. No. 12).

It is so ordered this 26th day of September, 2022.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge